**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TALSK RESEARCH INC., | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-02167 |
| v. | ) | Hon. Thomas M. Durkin |
| EVERNOTE CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT**

Plaintiff Talsk Research Inc ("Talsk") brings this claim of willful patent infringement against Evernote Corporation ("Evernote").

**The Parties**

1. Talsk is a Delaware corporation with its principal place of business in Chicago, Illinois.

2. Evernote is a Delaware corporation with its principal place of business in Redwood City, California.

**Jurisdiction and Venue**

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Evernote because Evernote does and has done substantial business in this judicial district, including transacting business in this judicial district by offering to sell, selling, and advertising the infringing products and services in such a

way as to reach customers in Illinois and in this judicial district. In short, Evernote has committed acts of infringement in this judicial district.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and 1400(b) because a substantial part of the events giving rise to the claims occurred in this judicial district, and Evernote has committed acts of infringement in this district.

**Background Facts**

7. Srikrishna ("Krish") Talluri is the inventor of the methods disclosed in U.S. Patent No. 7,178,097 (the "'097 patent") (attached hereto as "Exhibit A"). Mr. Talluri applied for the '097 patent on November 13, 2000. As of the time the '097 patent issued, February 13, 2007, Mr. Talluri had founded Business One, Inc., which practiced the '097 patent by offering to sell the "RefMArc" product. As of 2012, Mr. Talluri had also founded Talsk, which also practiced the '097 patent by offering to sell the "JotLingo" product: "JotLingo lets users take notes & save web-clips on the fly & access them from anywhere."

8. On June 8, 2012, Mr. Talluri wrote to the chief operations officer of Evernote, Mr. Ken Gullicksen, and stated as follows: "I'm writing to inquire if Evernote would be interested in JotLingo. In addition to the innovative features we're building, we also have patents that should be of increasing importance to Evernote—in light of the technical changes you've been making over the past year." (6/8/2012 E-Mail from K. Talluri to K. Gullicksen (attached hereto as "Exhibit B").) Mr. Gullicksen met with Mr. Talluri on June 13, 2012, at which meeting Mr. Gullicksen made a video recording of a portion of Mr. Talluri's presentation of JotLingo.

9. On June 14, 2012, Mr. Talluri wrote to Mr. Gullicksen, requesting that Evernote provide a copy of the video Gullicksen took of the JotLingo presentation without Mr. Talluri's permission. (6/14/2012 E-Mail from K. Talluri to K. Gullicksen (attached hereto as "Exhibit

C”).) Mr. Talluri copied the then chief executive officer of Evernote (Phil Libin) on this communication. (*Id.*) Mr. Libin is currently Executive Chairman of Evernote.

10. Six months later, Evernote made technical changes to the Evernote product and also introduced Evernote Business—copying the patented components of the JotLingo system. Evernote included all key features in its Business version that were outlined by Mr. Talluri in his demo to Ken Gullicksen. (*Compare* 6/13/2012 Jotlingo PowerPoint Presentation to Evernote (attached hereto as “Exhibit D”) *with* 8/24/2012 Evernote Blog (attached hereto as “Exhibit E”).)

**Willful Infringement of the ‘097 Patent by Evernote**

11. Talsk realleges and incorporates by reference the above paragraphs of this Complaint, inclusive, as though fully set forth in this Paragraph 11.

12. Evernote has infringed and continues to infringe, literally and under the doctrine of equivalents, claims of the ‘097 patent in violation of 35 U.S.C. § 271(b) through, among other activities, the manufacture, use, sale, importation and offer for sale of Evernote products.

13. Claim 8 of the ‘097 patent is a “method for archiving reference material cited in a bibliography of a manuscript by an author of the manuscript . . . .” (Exhibit A, 10:46-47.) As set forth below, Evernote induces users of Evernote products, such as MailChimp, to infringe claim 8 as follows:

a. Claim 8 provides, “an author of a manuscript using a web site on the Internet as a reference for the manuscript; the author transmitting the address of the web[] site to a database connected to the Internet using a first communications device connected to the Internet . . . .” (Exhibit A, 10:51-53.) Evernote sells its product to businesses like MailChimp, stating “Collaboration for the way you work today. Everything in one place[.] The central place for everyone’s work. All the relevant content from notes to

research to files, easily accessed." www.evernote.com/business. The user of the Evernote product is the business that buys Evernote for the benefit of its employees. This user, MailChimp in this example, infringes claim 8 of the '097 patent when, for example, a MailChimp employee researches an issue relevant to a project that that employee ("Employee 1") and another MailChimp employee ("Employee 2") are working on together. In this example, Employee 1 finds an Internet web site relevant to the project. Employee 1 uses the Evernote webclipper and saves a copy of the web page to the Evernote folder (*i.e.*, local storage) and to Evernote's cloud-based storage solution.

b. Claim 8 includes "the database obtaining a copy of the web site from the Internet upon receiving the web site address from the author such that the copy of the web site obtained by the database is verbatim to the web site as on the Internet at the time the author transmitted the web site address to the database; associating a distinctive key to the copy of the web site; storing at the database the copy of the web site with the distinctive key; the author citing the web site as being a reference for the manuscript by listing identification of the web site along with the distinctive key in the bibliography of the manuscript . . . ." (Exhibit A, 10:54-66.) Employee 1 is an authorized user of the Evernote product because MailChimp pays money to Evernote for use of the Evernote software and cloud-based storage. By saving the web page to local storage and Evernote's cloud-based storage solution, Employee 1 causes a verbatim copy of the web page that Employee 1 found on the Internet to be stored and causes a distinctive key to be associated with the copy.

Because the copy of the web site is relevant to the project that Employee 1 and Employee 2 are working on together, Employee 1 cites the copy of the web site in the Evernote "Notebook" pertaining to the project, providing Employee 1 and Employee 2 with access to the verbatim copy of the web site.

c. Claim 8: "an audience of the manuscript obtaining the distinctive key from the bibliography of the manuscript; the audience transmitting the distinctive key to the database using a second communications device connected to the Internet in order to request the database for the copy of the web site; and the database transmitting a copy of the stored copy of the web site to the audience via the Internet and the second communications device in response to the database receiving the distinctive key from the audience . . . ." (Exhibit A, 11:1-10.) Employee 2 is also an authorized user of the Evernote product because MailChimp pays money to Evernote for use of the Evernote software and cloud-based storage. Further, Employee 2 uses the distinctive key from the citation provided by Employee 1 and obtains a verbatim copy of the website from the "Notebook."

14. Evernote knows of the '097 patent based on, among other things, correspondence between Mr. Talluri and Messrs. Gullicksen and Libin. Moreover, Evernote knows how the '097 patent claims read on the Evernote product. Notwithstanding this particular knowledge of the Evernote product and how that product infringes the '097 patent, Evernote refuses to purchase or license the '097 patent. In sum, Evernote willfully infringes the '097 patent.

15. Talsk seeks lost profits or a reasonable royalty or both based on what enterprise, mid-size, small, and public customers pay Evernote for use of the Evernote software and related cloud-based storage.

WHEREFORE, Talsk respectfully requests that this Court enter judgment against Evernote as follows:

A. Finding that Evernote has infringed and is infringing one or more claims of the '097 patent;

B. Finding that Evernote's infringement has been willful;

C. Awarding Talsk lost profits or a reasonable royalty, including pre-judgment and post-judgment interest;

D. Awarding Talsk treble damages;

E. Finding that this case is "exceptional" under 35 U.S.C. § 285 and awarding Talsk its expenses and attorneys' fees incurred in bringing and prosecuting this action; and,

F. Awarding such additional relief as the Court deems just and proper.

**JURY DEMAND**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Talsk requests a trial by jury.

Respectfully submitted,

Date: March 10, 2016

*/s/ Matthew M. Wawrzyn*
*Counsel for Talsk Research Inc.*

Matthew M. Wawrzyn (#6271635)
*mwawrzyn@siprut.com*
Stephen C. Jarvis (#6309321)
*sjarvis@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, IL 60602
312-236-0000

4817-5078-5582, v. 6