# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TALSK RESEARCH INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | 16-CV-2167 |
| | ) | JUDGE THOMAS M. DURKIN |
| EVERNOTE CORPORATION | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant has filed a Motion To Transfer, Or In The Alternative, To Dismiss For Improper Venue [Doc. 42]. Defendant's motion is based on an intervening change in law regarding venue in patent cases, namely, the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017), decided on May 22, 2017. For the reasons that follow, Defendant's motion is granted.

### A. THE COMPLAINT

Plaintiff filed the complaint on February 12, 2016, followed by an amended complaint on March 10, 2016, followed by a second amended complaint on September 16, 2016. In the second amended complaint, Plaintiff alleges the following. Plaintiff's founder and the inventor of the methods described in the patent at issue (the '097 Patent), Srikrishna Talluri, contacted Defendant's chief operations officer, Ken Gullicksen, to inquire whether Defendant would be interested in Plaintiff's product, "JotLingo," a software program that "lets users take notes and save web-clips on the fly and access them from anywhere." R. 24

(¶¶ 13-14). The two met in June 2012 for a demonstration of the JotLingo product, at which time Gullicksen made a video recording without Plaintiff's permission of a portion of Talluri's presentation. *Id.* (¶¶ 15-18). Six months later, Defendant "made technical changes to the Evernote product and introduced Evernote Business." *Id.* (¶ 20). "Evernote's technical changes to its product" allegedly "copied the patented components of the JotLingo system and infringe claims of the '097 Patent." *Id.* (¶ 21). As a result, Plaintiff claims that Defendant "has directly infringed and continues to directly infringe, literally, and under the doctrine of equivalents, one or more claims of the '097 Patent by making, using, offering for sale, selling, or importing the Evernote platform, including Evernote Web Clipper." *Id.* (¶ 24).

## B. *TC HEARTLAND*

Venue in a patent infringement case is governed by 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The Supreme Court's opinion in *TC Heartland* clarified the first prong of that statute (place of residence).

Prior to *TC Heartland* (and at the time the complaint was filed in this action), controlling authority from the Court of Appeals for the Federal Circuit held that a corporate patent defendant was deemed to reside anywhere it was subject to personal jurisdiction. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Not long after this case was filed, the Federal Circuit

2

rejected a challenge to *VE Holding Corp.* in the very case the Supreme Court eventually overturned, stating that the defendant's argument against the result in *VE Holding* was "utterly without merit and logic" and inconsistent with "settled precedent of over 25 years." *In re TC Heartland LLC*, 821 F.3d 1338, 1341, 1342 (Fed. Cir. 2016). A year later, the Supreme Court reversed the Federal Circuit's decision in *TC Heartland* and overruled *VE Holding,* finding that residency for purposes of the patent venue statute actually had been decided long before *VE Holding* in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1956). *See T.C. Heartland,* 137 S. Ct. at 1520-21. Consistent with *Fourco,* the Supreme Court held in *TC Heartland* that a domestic corporation "resides" *only* in its state of incorporation. *Id.*

The Supreme Court's ruling in *TC Heartland* is entitled to full retroactive effect. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). Thus, while venue in this case in the Northern District of Illinois originally appeared proper pursuant to the Federal Circuit's prevailing view in *VE Holding* of the meaning of the place of residence prong of the patent venue statute,[1] the Supreme Court's intervening decision has now made clear that venue in fact is improper in this District at least

---

[1] Defendant does not contest that the Court has personal jurisdiction over it.

insofar as the residence prong of the venue statute is concerned. As a result, on July 20, 2017, Defendant filed the improper venue motion presently under consideration by this Court [Doc. 42].

### C. DEFENDANT'S MOTION TO DISMISS

A party may waive the defense of improper venue by "omitting it from a motion" under Rule 12(b) if it was "available to the party" at the time the motion was made. Fed. R. Civ. P. 12(h)(1)(A) & 12(g)(2). Defendant filed a motion to dismiss the second amended complaint [Doc. 24] prior to the Supreme Court's *T.C. Heartland* decision in which it argued that Plaintiff had not pled a viable theory of infringement but did not raise any venue issue. That motion was fully briefed on December 28, 2016, but was not yet ruled on by this Court when *T.C. Heartland* was decided.

On August 3, 2017, this Court issued an order in another patent case, *Lit v. Zazzle Inc.*, where the defendant also had filed a motion based on improper venue after the Supreme Court's ruling in *TC Heartland*. In *Lit,* like in this case, the defendant had filed a motion to dismiss before the Supreme Court's decision in *TC Heartland* was issued, and that motion had not raised an improper venue defense. Also like this case, the motion to dismiss was still pending before this Court when the defendant filed its improper venue motion. The defendant in *Lit* argued that the plaintiff had waived its objection to improper venue by not raising it in its motion to dismiss. This Court ruled that because the motion to dismiss was still pending, the defendant could amend it to raise the improper venue defense based on the

4

Supreme Court's intervening decision in *TC Heartland. See Lit v. Zazzle Inc.*, No. 16-cv-7054 (N.D. Ill. Aug. 3, 2017) (Durkin, J.) (order granting in part and denying in part motion to dismiss for improper venue). On August 8, 2017, this Court issued an order in the present matter alerting the parties to the Court's decision in *Lit*, and setting a status hearing to address the effect of that decision on Defendant's improper venue motion in this case, [Doc. 45].

### D. THE SECOND PRONG OF THE PATENT VENUE STATUTE

At the status hearing held on August 16, 2017, Plaintiff requested the opportunity for limited discovery and briefing to address whether venue was proper in the Northern District of Illinois based on the second prong of the patent venue statute, which was not at issue in either *TC Heartland* or the *Lit* case. The Court allowed Plaintiff to proceed as requested, and Plaintiff filed its response in opposition to Defendant's motion to dismiss or transfer for improper venue [Doc. 48] on August 30, 2017. In that response, Plaintiff did not argue the waiver issue but instead focused on the second prong of the patent venue statute. The second prong states that venue in a patent case is proper wherever "the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

The Court is not persuaded by Plaintiff's arguments that Defendant has a "regular and established place of business" within this District. Defendant offers its software products over the Internet through virtual "stores," such as Google Play or the Apple App store. R. 42-1 (Lau Decl. ¶¶ 3-4). It does not sell its products using any physical retail stores in this District. *Id.* (¶ 6). It has no offices, warehouse,

5

retail locations, or other facilities in Illinois, and it does not own, lease, or control any land in Illinois. *Id.* Nor does Defendant have any full-time employees living in this District who are paid a salary and work exclusively for it, *see id.* (¶¶ 7-8), as was the case in *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985), one of the two cases on which Plaintiff relies.[2] For these reasons, it would appear that venue is not proper here based on the regular and established place of business prong of the patent venue statute.

Nevertheless, Plaintiff argues that Defendant has a regular and established place of business in this District based primarily on the activities of seven residents who have signed up to participate in the "Evernote Community Program." The individuals in question received "Community Member" status after a short online training course. They are not Evernote employees:

---

[2] In *Cordis*, although the defendant corporation did not have a physical office in the district where suit was filed, the Federal Circuit declined to issue a writ of mandamus to overturn the district court's finding that venue was proper where the two sales representatives in question: (i) stored the defendant's product literature, documents, and products in their home offices; (ii) took tax deductions for their home office space; (iii) completed paperwork and performed other administrative tasks for the defendant at their home offices; (iv) employed a secretary service at the defendant's expense in the district to answer calls from potential and existing customers and perform administrative tasks; and (v) acted as technical consultants on the defendant's behalf within the district. 769 F.2d at 735. In view of those facts, the Federal Circuit found, in essence, a de facto physical presence in the forum even if the corporate defendant had not gone so far as to purchase or lease office space there. *See id.* Apart from the factual distinctions between this case and *Cordis*, the procedural posture of the Federal Circuit's decision must be taken into account. *See London v. Greene's Luggage, Inc.*, 1988 WL 64586, at *3 (N.D. Ill. June 15, 1988) (noting that the *Cordis* court "acknowledged that 'the use of mandamus . . . is limited to exceptional circumstances to correct a clear abuse of discretion or usurpation of judicial power,' and denied the writ because the defendant's right to the requested relief was 'by no means clear'").

> 12. Relationship of the Parties. It is the parties' express intention that you are an independent contractor and not an employee, agent, joint venturer, franchisee or partner of Evernote. You have no authority, legal or otherwise, to bind Evernote or to assume or create any obligation or responsibility, express or implied, written or oral, on behalf of Evernote or in Evernote's name. You are solely responsible for payment of any income taxes, social security taxes, unemployment or disability insurance charges or similar items in connection with your performance of any consulting services for your clients and that you receive while acting as an EC Program participant. The rights granted by Evernote to you and the services to be provided by you under or in connection with these Program Terms are nonexclusive; except as expressly provided in these Program Terms, nothing herein shall limit or otherwise impair each party's freedom to conduct their business within the Territory. Except as may be expressly agreed by you and Evernote pursuant to a Supplemental Program, you acknowledge and agree that Evernote shall not have any obligation to you for compensation or expense reimbursements on account of these Program Terms or your actions in the Programs.

R. 53-1 at 12. Community Members are free to recommend or not recommend Defendant's software to their customers in the course of their own business. While Defendant provides certain financial incentives in the form of bonuses to Community Members who recommend its products, they receive no salary from Defendant. *See* R. 55 at 6. Customers who ultimately sign up with Defendant do so through Defendant's website, not through the Community Member. Thus, while Defendant may offer financial incentives for sales Community Members facilitate, these sales are fulfilled between Defendant and the customer directly.

Plaintiff's argument that Defendant has a regular and established place of business in this District because of the presence of the seven Community Members

is a non-starter. None of the seven residents were Community Members *when this case was filed*. *See Welch Scientific Co. v. Human Eng'g Inst., Inc.,* 416 F.2d 32, 35 (7th Cir. 1969) ("under the patent venue statute, venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter").[3]

In any event, Plaintiff's argument that the Community Members' activities are sufficient to establish venue in this District relies entirely on the four-factor test set forth in *Ratheon Co. v. Cray, Inc.*, 2017 WL 2813896 (E.D. Tex. June 29, 2017). On September 21, 2017, however, the Federal Circuit vacated that decision when it granted a petition for mandamus filed by the defendant, holding that the four-factor test adopted by the district court was "not sufficiently tethered to [the] statutory language and thus [ ] fails to inform each of the necessary requirements of the statute." *In re Cray Inc.*, 2017 WL 4201535, at *5 (Fed. Cir. Sept. 21, 2017). The Federal Circuit noted that § 1400(b) requires that "a defendant has" a "place of business" that is "regular" and "established," and stated that "[*a*]*ll* of these requirements must be present." *Id.* (emphasis added). That is, (1) there must be a

---

[3] *See also Adaptix, Inc. v. HTC Corp.,* 937 F. Supp. 2d 867, 871 (E.D. Tex. 2013) (venue "determination is made as the circumstances existed at the time of filing") (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)); *but see Daughetee v. CHR Hansen, Inc.*, 2011 WL 1113868, at *3 (N.D. Iowa Mar. 25, 2011) (holding that, while the majority rule is that venue is determined based on the facts in existence when the suit was brought (citing numerous cases), the court was bound by the Eighth Circuit's minority view that "[i]t is proper to assess the propriety of venue on the basis of circumstances as they now exist, as opposed to the state of affairs that obtained when the complaint was first filed" (quoting *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1198 n.2 (8th Cir. 1990))).

physical place in the district, (2) it must be a regular and established place of business, and (3) it must be the place of business of the *defendant*. *Id*. at *5, 6.

With respect to the first requirement, "[t]he statute requires a 'place,' *i.e.*, '[a] building or part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Id.* at *5. "The statute [ ] cannot be read to refer merely to a virtual space or to electronic communications from one person to another." *Id*. "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' *Cordis*, 769 F.2d at 737, there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray,* 2017 WL 4201535, at *5.

With respect to the second requirement, regularity means that the business "operates in a 'steady[,] uniform[,] orderly[, and] methodical' manner. In other words, sporadic activity cannot create venue." *Id*. (citation omitted). The "established" limitation means "that the place of business is not transient. It directs that the place in question must be 'settle[d] certainly, or fix[ed] permanently.'" *Id*. at *6 (citation omitted). "Accordingly, while a business can certainly move its location, it must for a meaningful time period be stable, established. On the other hand, if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant." *Id*.

Finally, the third requirement—that "the regular and established place of business" must be "the place of the *defendant*"—means that it cannot be solely a

9

place of the defendant's *employee*. *Id.* "Employees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Id.* "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place. . . Another consideration might be whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place. . . . Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.*

Ultimately, the Federal Circuit found that the two employees in that case, who lived in the Eastern District of Texas and worked for the defendant, were insufficient as a matter of law to establish venue in the Eastern District of Texas under § 1400(b). *Id.* at *7-8. The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a "regular and established place of business" for Defendant within the meaning of § 1400(b). Defendant has no fixed physical presence in this District, and relying on customer use of Defendant's software within the district as a substitute for a fixed physical location would not be proper. *See Bristol-Myers Squibb v. Mylan Pharms. Inc.*, 2017 WL 3980155, at * 16 (D. Del. Sept. 11, 2017) ("maintaining a website that allows consumers to purchase a defendant's goods or products within the district does not, by itself, demonstrate

that the defendant has a regular and established place of business in the district"; a contrary rule would "turn any cell phone . . . or computer into a regular and established place of business for any company with a website").

Nor does Defendant have the necessary control over its Community Members for the Court to consider their physical presence in the District the equivalent of Defendant's presence.[4] And their activities on Defendant's behalf, in any event, have not been shown to be sufficiently stable or established to be seen as the operation of Defendant's business in this District. Finally, there is no indication in the record of the physical location out of which each Community member operates that would establish those physical locations were *not* solely the location of the Community Members.[5] In short, even if the Court were to overlook the fact that

---

[4] *Compare Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1388 (7th Cir. 1976) ("Inasmuch as [the defendant] negotiated and signed the lease, paid the rent directly, paid for telephone and electricity, paid for telephone listings, paid for cooperative advertising, paid for service expenses, owned all of the products, office equipment and other personal property in a relatively large (3200 square feet) showroom-office, [the defendant] had the clear right to exercise control over those premises. [The employee in question] spent his time exclusively in the service of [the defendant]. . . . His economic fate rested with [the defendant]. The right to termination gave [the defendant] the right to control [the employee] as well as to control the [defendant's] premises in Chicago.").

[5] *See Univ. of lll. Found. v. Channel Master Corp.,* 382 F.2d 514, 516 (7th Cir. 1967) (finding venue improper where defendant's "sole activities in the District" consisted of sales promotion and solicitation by a single employee," and where "[a]ll orders from customers in the district," "[a]ll shipments to customers," and "[a]ll payments for goods," were accepted from, made to, and received by the defendant outside the district); *Lace v. Lace, No.* 1989 WL 103364, at *3 (N.D. Ill. Aug. 28, 1989) (venue improper because "customers in this area must look to California for approval of their order, shipment, repairs and other assistance"); *London*, 1988 WL 64586, at *3 (no "permanent and continuous presence" because defendant's sales representative "does not maintain inventory or provide technical assistance to customers"); *Surgical Laser Tech., Inc, v. Cooper Lasersonics, Inc.*, 1988 WL 40961, at *3 (N.D.

11

these independent Community Members were not in existence at the time this case was filed, the Court must hold that their activities do not establish that Defendant has a "regular and established place of business" in the Northern District of Illinois.[6]

E. DISMISSAL VERSUS TRANSFER

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1406(a) "is a curative statute which provides the mechanism by which a federal court may transfer an action to another district when

---

Ill. Apr. 26, 1988) (finding no regular and established place of business where (1) the defendant did not keep any inventory in Illinois and did not sell directly to customers; (2) the defendant's Illinois sales people were "merely authorized to solicit orders and forward them to defendant in California," and (3) "Illinois purchasers are billed directly upon shipment, and payment is made to defendant in California—not Illinois"); *E.T. Mfg. Co. v. Xomed, Inc.,* 1986 WL 321, at *2 (N.D. Ill. Jan. 13, 1986) (finding defendant's representatives do not keep any inventory in Illinois, all orders are sent to the home office in Florida, all orders are shipped directly to the customer, and all payments are made to the home office).

[6] Plaintiff also relies on data Defendant provided during discovery concerning the total revenue and total number of active users of its program in the state. But having a "regular and established place of business" under § 1400(b) is not the same as merely "doing business" in a district. *See Knapp-Monarch Co. v. Casco Prod. Corp.,* 342 F.2d 622, 624-25 (7th Cir. 1965) (declining "to substitute the 'doing business' test in section 1391(c) for the 'regular and established place of business' test in section 1400(b)" because doing so "would ignore the holding in *Fourco*," where defendant's "contacts, simply because of their multiplicity and variety" still did not satisfy the § 1400(b) test "although they might well indicate that it was 'doing business' in the Chicago area [under] the general venue statute"); *see also Fourco*, 353 U.S. at 226 (§ 1400 reveals legislative intent to ensure that patent infringement defendants are not subject to suit "where they are merely 'doing business'").

12

venue is wrong." *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, 650 F. Supp. 57, 60 (D.V.I. 1986). "The decision whether a transfer or a dismissal is in the interest of justice [ ] rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). But, generally, transfer is "more in the interest of justice than dismissal." *CAT Aircraft Leasing, Inc.,* 650 F. Supp. at 60; *see also United States v. Miller-Stauch Constr. Co.,* 904 F. Supp. 1209, 1214 (D. Kan. 1995) ("Transfer should be the usual course rather than dismissal.") (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3827 at 274 (1986)).

In the typical case, it is the defendant who seeks dismissal and the plaintiff who seeks a transfer. Here, however, it is the opposite: Plaintiff seeks dismissal without prejudice and Defendant seeks a transfer to the Northern District of California.

Plaintiff seeks dismissal without prejudice because, at the same time it filed its response to Defendant's improper venue motion, Plaintiff also filed a second "protective" action against Defendant in the District of Delaware. Plaintiff states that if this Court finds venue is improper in the Northern District of Illinois, it intends to pursue its Delaware lawsuit. In pursuit of this strategy, Plaintiff states that if this Court were to transfer the case to the Northern District of California, it will exercise its rights under Fed. R. Civ. P. 41(a)(1)(A) to dismiss the action without a court order in favor of the Delaware action. According to Plaintiff, Defendant's pending Rule 12(b)(6) motion to dismiss in this matter does not prevent

13

it from following this course. *See* R. 52 at 17 (citing *Swedberg v. Marotzke*, 339 F.3d 1139, 1145 (9th Cir. 2003) ("However, because Rule 41(a)(1) specifically allows a plaintiff to dismiss a complaint without prejudice in the face of a 12(b)(6) motion, such a dismissal is not regarded as forum-shopping.")). Therefore, Plaintiff argues, "a simple dismissal without prejudice, rather than a transfer, will avoid unnecessary court filings and wasted judicial resources in California." R. 52 at 17.

Defendant, on the other hand, argues that the interests of justice favor a transfer of this action to the Northern District of California. The equitable considerations on which Defendant relies include the fact that Defendant's pending motion to dismiss the operative complaint—the third that Plaintiff has filed in this case—seeks dismissal with prejudice on the ground that, among other things, Plaintiff has had multiple opportunities to correct the deficiencies in its infringement allegations. *See Nalco Co. v. Chem-Mod, LLC*, 2016 WL 1594966, at *4 (N.D. Ill. Apr. 20, 2016) (dismissing fourth amended complaint with prejudice where the plaintiff was "provided several opportunities to re-plead its allegations but has failed to plead a plausible case of patent infringement"). According to Defendant, Plaintiff's Delaware complaint would effectively end run that pending motion by giving Plaintiff a fourth bite of the apple. Moreover, Defendant contends the Delaware complaint includes new substantive allegations that Plaintiff could have but did not make when it filed its previous amendments in this case. Finally, Defendant argues that the Federal Rules provide Defendant with some relief if Plaintiff exercises its rights under Rule 41(a) to dismiss this action once it is

14

transferred to the Northern District of California. "Specifically, under Rule 41(d), '[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action.' 'Costs awarded under Rule 41(d) . . . are intended to serve as a deterrent to forum shopping and vexatious litigation.' Dismissal without prejudice under § 1406, however, would grant [Plaintiff] a free pass in contravention of the spirit, if not letter, of Rule 41." R. 55 at 14 (quoting Rule 41(d) and *Simeone v. First Bank Nat'l Assn*, 971 F.2d 103, 108 (8th Cir. 1992)). For all of these reasons, Defendant argues, dismissal of this case without prejudice, rather than a transfer to the Northern District of California, would be unfairly prejudicial to Defendant.

Defendant also argues that dismissal without prejudice under 28 U.S.C. § 1406 is not in the "interests of justice" because it will create judicial inefficiencies and delay the resolution of this case. Defendant argues it will seek a transfer of Plaintiff's newly filed lawsuit under 28 U.S.C. § 1404 from the District of Delaware to the Northern District of California because the Northern District of California is the center of gravity for this case:

> As a general rule, the preferred forum is that which is the center of the accused activity. As the Court noted in *AMP Incorporated v. Burndy of Midwest, Inc.*, 340 F. Supp. 21, 24-25 (N.D. Ill. 1971), "The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." In this case, all development, testing, research, and production of the subject product occurred in Massachusetts. Additionally, virtually all marketing and sales decisions

15

> were made there. By contrast, only some very limited sales activity occurred in this district.

*S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983). Defendant's principal place of business is in the Northern District of California, and the majority of Defendant's employees, including those most familiar with the design and functionality of the accused features, are based out of Defendant's Redwood City office; hence, the majority of likely party witnesses are located in the Northern District of California. R. 42-1 at 3 (Lau Decl. ¶ 7). Further, the alleged meeting between Plaintiff's principal and Defendant's Chief Operation Officer took place in the Northern District of California. *See* R. 24 (SAC ¶ 18); R. 24-3 (Ex. C).

According to Defendant, the district court in Delaware is likely to grant such a transfer request for two reasons. First, Defendant cites *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.,* 126 F. Supp. 3d 430 (D. Del. 2015), in which a Delaware district court transferred a case to the Northern District of California, even though the defendants were incorporated in Delaware, because the only factor that weighed against transfer was the plaintiff's choice of forum. *Id.* at 446-47 (granting transfer because of "the far more significant connections that the Northern District of California has with the case (as compared to this District)," and because there was "little to counter-balance those many connections, other than the fact that Plaintiff chose this forum for suit") (citing numerous other cases applying the same analysis and reaching a similar conclusion).[7]

---

[7] The result in the *Pabst* case (as well as in other cases like it from within that district which are cited in the *Pabst* decision) is not surprising in that the Delaware

16

Second, Defendant cites *MEC Resources, LLC v. Apple, Inc.*, 2017 WL 4102450 (D. Del. Sept. 15, 2017), in which a Delaware district court recently granted a motion to transfer a pending patent case to the Northern District of California under 28 U.S.C. § 1404. In deciding to transfer the case to California, the *MEC* court *sua sponte* raised the issue of the current congestion faced by the District of Delaware:

> This District is now reduced to two active judges, only increasing the number of cases on each judge's docket here. While visiting judges can assist, we also must manage our busy urban dockets and, as much as we may try, cannot fully mitigate the loss of experienced judges in this District while we await commission for new district court judges.

*Id.* at * 5.[8]

The parties have each presented the Court with their litigation strategies for this case. But the Court's decision is not based on either of those strategies; its choice is and must be based on the interests of justice. On the one hand, venue is

---

district court merely applied the "center of gravity" test in the same manner as other district courts have done on similar facts. *See, e.g., S.C. Johnson & Son, Inc.,* 571 F. Supp. at 1188 ("Essentially, this district is a forum unrelated to the heart of the instant lawsuit, especially in light of the strong connection which Boston has with the suit. The only reason this forum was selected is that the federal courts of Wisconsin are unavailable. While plaintiff's choice of forum is important, it is of reduced value where, as here, the chosen forum lacks significant contact with the underlying cause of action. From the foregoing, it is clear that in the interest of justice and for the convenience of the parties and witnesses, the U.S. District Court for the District of Massachusetts is far a preferable forum to this one in which to proceed with this case.") (internal citation omitted).

[8] According to Defendant, the District of Delaware has borne the brunt of the consequences since *TC Heartland* was decided on May 22, during which time 320 new patent cases have been filed there. *See* R. 56-2 at 1. In contrast, only 94 new patent cases have been filed in the Northern District of California. *See id.* at 2.

17

proper in both the District of Delaware and the Northern District of California. Thus, even though the Northern District of California might be the more appropriate or convenient venue of the two, it is beyond dispute that Plaintiff could have filed its lawsuit in the District of Delaware. And a "plaintiff's choice of venue must be respected" unless the relevant factors justify a transfer of venue. *Adaptix, Inc.*, 937 F. Supp. 2d at 871. In this case, the Court finds that the relevant factors do justify overriding Plaintiff's choice of Delaware as venue for its lawsuit, for the following reasons.

To begin with, the fact that Defendant is incorporated in Delaware carries little weight. Other than being it state of incorporation, Defendant does not have any ties to or physical presence in Delaware. *See* R. 42 at 12. Moreover, the fact that Delaware is also Plaintiff's state of incorporation does not add anything to the analysis unless Plaintiff were to make an argument that being incorporated in Delaware affects the "center of gravity" test, which it does not do. Plaintiff cites to Delaware's interest in adjudicating litigation that involves two companies incorporated in that state, but in *MEC Resources* the district court stated that "[t]his factor is typically neutral in the context of patent litigation, as patent issues do not give rise to a local controversy or implicate local interests." 2017 WL 4102450, at *6 (internal quotation marks and citations omitted).

In addition, Plaintiff does not dispute that the most appropriate district under the "center of gravity" test is the Northern District of California. Plaintiff could have but did not seek to transfer this case to Delaware, and instead filed a

18

separate action there. Perhaps it took this course on the belief that a Delaware district court would be more inclined than this Court to honor Plaintiff's choice of forum in the face of a transfer motion under 28 U.S.C. § 1404, notwithstanding that the center of gravity for the case clearly is elsewhere. But if that is the case, Plaintiff appears to be mistaken. The case law discussed above indicates that a Delaware district court would grant a motion to transfer under 28 U.S.C. § 1404 if one were to be filed by Defendant in Plaintiff's newly filed action in that district. Plaintiff does not cite a single case that convinces the Court there is any possibility of a contrary result.

This Court could honor Plaintiff's choice of forum and allow the district court in Delaware to transfer the case. But this Court has the power under § 1406 to also transfer this case to the most appropriate forum, and, indeed, the duty to do so where the interests of justice are best served by that course. It serves no purpose, and certainly not the interests of justice, for this Court to dismiss this case in deference to a lawsuit the District of Delaware will transfer anyway to the District of Northern California, particularly in light of the potential for unfair prejudice such a ruling would impose on Defendant because of the procedural posture of this case. Nor should Plaintiff receive a free pass on the Rule 41(a) dismissal it says it intends to take in this matter if the case is transferred. To the extent Plaintiff's intent to file a Rule 41(a) dismissal has any bearing on this Court's decision, it weighs in favor of a transfer to allow Defendant the opportunity to seek the relief to which it deems it is entitled upon such dismissal, something Defendant would not

19

be able to do were this Court to dismiss this action for Plaintiff. While it may be true, as Plaintiff contends (R. 48 at 16 n. 4), that there is nothing inappropriate in a party filing a protective action in another district court in the event the first filed action is dismissed on procedural grounds, the court in the first filed action is not required to take that second filing into consideration in deciding on the appropriate resolution of the first filed case. And a plaintiff who chooses to pursue a strategy of filing a successive "protective" lawsuit and forcing a defendant to defend two identical or similar lawsuits must be prepared to deal with the consequences.

## Conclusion

For the foregoing reasons, Defendant's Motion To Transfer, Or In The Alternative, To Dismiss For Improper Venue [Doc. 42] is GRANTED, and this case is transferred to the Northern District of California.

_____
Thomas M. Durkin
United States District Judge

Dated: September 26, 2017

20